# EXHIBIT A

| **Summons** | CIVIL DOCKET NO.<br>2085CV00202 | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br><br>CATHERINE VITALE<br><br>           Plaintiff(s)<br>VS.<br><br>WEGMANS FOOD MARKETS, INC.,<br>(D/B/A WEGMANS MASSACHUSETTS, INC.)<br><br>        Defendant(s) | Clerk of Courts<br>Worcester County<br><br>COURT NAME & ADDRESS:<br>Worcester Superior Court<br>Civil Clerk's Office<br>225 Main Street<br>Worcester, MA 01608 |
|---|---|

THIS SUMMONS IS DIRECTED TO    Wegmans Food Markets, Inc.
(d/b/a Wegmans Massachusetts, Inc.)
_____ (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Worcester Superior Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

**1. You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

**2. How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

    a) Filing your **signed original** response with the Clerk's Office for Civil Business, Worcester Superior Court
       225 Main Street, Worcester, MA 01608 (address), by mail or in person **AND**

    b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:
       Darren T. Griffis, Esq.
       Glickman, Sugarman, Kneeland & Gribouski
       11 Harvard Street, P.O. Box 2917, Worcester, MA 01609

**3. What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

A true copy Attest _Joseph P Casey_
Deputy Sheriff Suffolk County
2-28-20

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

## 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

## 5. Required information on All Filings:

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. ___Judith Fabricant___ , Chief Justice on ___February 20___ , 20_20_ . (Seal)

Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ . I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated: _____          Signature: _____

**N.B.   TO PROCESS SERVER:**

   PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

                                    Date:

rev. 1/2019

| CIVIL ACTION COVER SHEET | DOCKET NUMBER<br>2085CV00202 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| | | COUNTY |
|---|---|---|
| PLAINTIFF(S): | CATHERINE VITALE | Worcester |
| ADDRESS: | 19 Brookway Drive | |
| | Shrewsbury, MA 01545 | DEFENDANT(S): WEGMANS FOOD MARKETS, INC. |
| | | (d/b/a WEGMANS MASSACHUSETTS, INC.) |
| ATTORNEY: | Darren T. Griffis | |
| ADDRESS: | Glickman, Sugarman, Kneeland & Gribouski | ADDRESS: c/o CT Corporation Services Company |
| | 11 Harvard Street | 84 State Street |
| | Worcester, MA 01609 | Boston, MA 02109 |
| BBO: | 675627 | |

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | [X] YES  [ ] NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?  [ ] YES  [X] NO          Is this a class action under Mass. R. Civ. P. 23?  [ ] YES  [X] NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
    1. Total hospital expenses ................................................. $ _____
    2. Total doctor expenses ................................................. $ _____
    3. Total chiropractic expenses ........................................ $ _____
    4. Total physical therapy expenses ................................ $ _____
    5. Total other expenses (describe below) ..................... $ _____
                                 Subtotal (A): $ _____
B. Documented lost wages and compensation to date ............................................ $ ~49,300
C. Documented property damages to date ................................................................. $ _____
D. Reasonably anticipated future medical and hospital expenses .......................... $ _____
E. Reasonably anticipated lost wages ........................................................................ $ ~183,000
F. Other documented items of damages (describe below) ....................................... $ _____
    Emotional distress and punitive damages

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
See complaint

                                        TOTAL (A-F): $ ~232,300+

### CONTRACT CLAIMS
(attach additional sheets as necessary)

[ ] This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

                                            TOTAL: $ _____

Signature of Attorney/ Unrepresented Plaintiff: X _____  Date: 2/19/20

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _____  Date: 2/19/20

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

CATHERINE VITALE,　　　　　　　　　　)
　　　　　Plaintiff　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　　)　　　　DOCKET NO.  2085CV00202
　　　　　　　　　　　　　　　　　　　　　)
WEGMANS FOOD MARKETS, INC.,　　　　)
(D/B/A WEGMANS MASSACHUSETTS, INC.), )
　　　　　　　　　　　Defendant　　　　　)

## COMPLAINT AND JURY DEMAND

1.　Defendant Wegmans Food Markets, Inc. (d/b/a Wegmans Massachusetts, Inc.) (hereafter
"Wegmans") discriminated against Plaintiff Catherine Vitale (hereafter "Ms. Vitale") by
terminating her employment based on her record of disability or impairment or because
Wegmans regarded her as having an impairment or disability in violation of Mass. Gen.
Laws ch. 151B, § 4 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, et
seq.

2.　In addition, Wegmans retaliated against Ms. Vitale for requesting and receiving a
reasonable accommodation of her disability, also in violation of Mass. Gen. Laws ch.
151B, § 4 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, et seq.

## JURISDICTION

3.　Ms. Vitale filed a complaint with the Massachusetts Commission Against Discrimination
on May 29, 2019, more than 90 days prior to the filing of this action.

4.　This Court has jurisdiction over this matter pursuant to M.G.L. c. 151B, § 9.

## PARTIES

1

5. The Plaintiff, Catherine Vitale is a resident of Shrewsbury, Massachusetts.

6. The Defendant, Wegmans Food Markets, Inc. (d/b/a Wegmans Massachusetts, Inc.), is a New York corporation that owns and operates a supermarket located in Northborough, Massachusetts.

## STATEMENT OF FACTS

### Ms. Vitale Had a Long, Exemplary Record of Employment with Wegmans

7. On May 2, 2011, Ms. Vitale applied for a position with the Wegmans supermarket that was scheduled to open at 9102 Shops Way in Northborough, Massachusetts 01532.

8. Ms. Vitale was offered a position as a cashier and commenced her employment with Wegmans on September 23, 2011.

9. Although Ms. Vitale was hired as a cashier, before the store opened, she was asked to work as a price checker and customer service associate in the Pricing Department.

10. Ms. Vitale willingly accepted this assignment and worked part-time as a price checker when the Wegman's store opened.

11. In November of 2012, Ms. Vitale applied for a service desk position within the Wegmans customer service department.

12. In the "Job Posting Evaluation Form" that was completed by Ms. Vitale's supervisor from the pricing department, the supervisor noted that Ms. Vitale met all of eligibility requirements for the service desk position and that she had "demonstrated exceptional customer service skills while performing her duties as a price checker. She greets and helps the customers...Her communications skills are above average...I thought her skills are well suited for the position."

13. Although Ms. Vitale was not selected for this position, the "Job Posting Feedback" form

indicated that she "[g]reets customers and answers their questions in a friendly manner. Proactively offers assistance to customers and provides accurate, timely information...Cathy is a people pleaser and will go above and beyond to make people happy."

14.   Ms. Vitale received her first performance review in January of 2013.  In that review, her supervisor, Stacy Lindeman, stated that Ms. Vitale had "helped implement the pricing structure that we utilize every day...Cathy goes above and beyond for her customers.  She is always willing with a smile on her face...Cathy has been challenged to take on many different roles within the store and does so with pride.  When needed, she helps the front end by jumping on register when they get busy and recently, she has been helping out HBC on load days to help drive their sales."

15.   After she was not chosen for the service desk position, Ms. Vitale decided to cross-train in the perishable foods department in the Northborough Wegmans store and picked up hours at both the pizza and subs counters in order to become more familiar with the overall operations of the store.

16.   In September 2013, Ms. Vitale again saw an opportunity to advance her career with Wegmans and applied for a full-time grocery customer service position at the Northborough location.

17.   Ms. Vitale received this promotion and started working in this position on October 5, 2013.

18.   As part of her first performance review in this new position, Ms. Vitale's supervisor, Jason Baetzhold, reported that "Cathy greets customers and answers their questions in a friendly manner.  She proactively offers assistance to customers and provides accurate, timely information...Cathy does a great job of approaching customers any time she feels she can

be of assistance...Over the past couple of months, Cathy has gotten a good understanding of how the grocery side of the store works.  She has been a great asset to our team...Cathy is eager to learn as much as possible and we look forward to working with her giving her new challenges."

19.  Despite her success in her new position in customer service, Ms. Vitale decided to apply for an administrative assistant position with Wegmans' New England division office.

20.  Ordinarily, Wegmans' employees are not permitted to apply for a transfer into a new position until they have been in their current position for at least six months; however, because of Ms. Vitale's stellar record of employment, an exception was made, and she was allowed to post for this job opening.

21.  In the "Job Posting Evaluation Form" submitted in connection with this application, Stacy Orrico reported that "[o]ver the course of time we have had the pleasure to work with Cathy in grocery, she has gone above and beyond on a daily basis in operations...Cathy has been a great asset to the grocery team.  She is a proactive learner, always asking to learn new things once she feels she has mastered a program...Cathy would be a successful asset to the New England Division."

22.  On February 26, 2014, Ms. Vitale was offered and accepted the administrative assistant position with Wegmans' New England Division.

23.  Ms. Vitale started working in that administrative assistant position on March 9, 2014 and received two raises, including an increase in salary on July 17, 2015, which she received for "merit."

24.  Ms. Vitale received a performance review in her new administrative assistant position on June 3, 2016.

4

25.    In that review, Marybeth Stewart, Wegmans' Human Resources Manager for the New
England division, repeatedly praised Ms. Vitale for her work as an administrative assistant.

26.    Ms. Stewart reported that "Cathy has great energy and enthusiasm and is a very positive
member of the division office. She has a natural way of making people...feel comfortable.
She is willing to take on any task we ask of her and asks clarifying questions when
needed...Cathy is a valued member of the New England Division team!"

27.    Although she was very successful in her administrative assistant position, Ms. Vitale
decided to once again apply for a promotion that would increase her responsibilities and
knowledge of Wegmans' operations.

28.    On April 26, 2017, Ms. Vitale applied to become a Pricing Coordinator for the
Northborough store.

29.    In the "Job Posting Evaluation Form" submitted in connection with this application, Ms.
Stewart, the Human Resources Manager, stated that Ms. Vitale "truly lives the Who We
Are Values each and every day; she excels in Teamwork and Diversity Awareness and also
provides Incredible Customer Service in every task she does...She would be a great
candidate for the position...She's willing to take on any task that's asked of her, and has
consistently taken on additional responsibilities in the time she's been in the position."

30.    Ms. Vitale was offered the Pricing Coordinator position and accepted that promotion on
May 16, 2017.

31.    Ms. Vitale was sent to Rochester, New York in June of 2017 for training for this new
position.

32.    During that training trip, Ms. Vitale broke her wrist when she fell in a parking lot and was
forced to take a leave under the company's workers compensation plan.

33. Ms. Vitale was out on workers compensation leave from June 2017 through September 2017.

34. Upon her return to work in September 2017, Ms. Vitale worked as the Pricing Coordinator in the Northborough Wegmans store and continued to receive exemplary feedback on her performance.

35. For example, in Ms. Vitale's April 26, 2018 Performance Review, her manager, Eugene Coon, noted that "Cathy understands the importance of her job and executes it with accuracy and enthusiasm. Cathy is in-tune with the entire store...Cathy goes above and beyond every day by communicating concerns throughout the store to management. Nice work Cathy!"

36. As that evaluation form indicates, Ms. Vitale was also in the process of training to provide performance reviews to other employees at Wegmans.

<u>Ms. Vitale Requested, and was Granted, a Leave of Absence from Work</u>

37. On May 15, 2018, Ms. Vitale was in a car accident in which her car was badly damaged after she hit a sign on the side of the road.

38. Ms. Vitale contacted Wegmans and informed her employer that she was not going to be able to make it to work that day because she had been in an accident.

39. On that same day, Ms. Vitale checked herself in to the New England Recovery Center detoxification program to address an ongoing substance use issue that had developed as a result of pain medication she was prescribed following her June 2017 accident at work.

40. On May 17, 2018, Ms. Vitale informed her employer that she needed to take a medical leave to address an "Employee Health Condition," as that term is defined under Wegmans' employment policies.

41. Ms. Vitale's leave was approved under the federal Family Medical Leave Act ("FMLA") and Wegmans' own Continued Employment Leave policy.

42. After completing the detoxification program, Ms. Vitale entered and successfully completed substance use treatment programs at Recovery Centers of America in Danvers, Massachusetts and Recovering Champions in Falmouth, Massachusetts.

43. During the entire process of her treatment, Ms. Vitale applied for – and received – permission from Wegmans to continue her medical leave under either the FMLA or Wegmans' Continued Employment Leave Policy.

44. As part of this approval process, she provided all necessary documentation substantiating her need for continued treatment and the accompanying leave.

45. Wegmans always approved her requests for continued leave.

<u>Following Her Successful Treatment, Wegmans Unlawfully Terminated Ms. Vitale's Employment for a Perceived Disability or for Ms. Vitale's Record of Having Such a Disability and Retaliated Against Ms. Vitale for Requesting a Reasonable Accommodation</u>

46. Ms. Vitale was successfully discharged from the Recovering Champions program on July 28, 2018.

47. On or about July 30, 2018, Ms. Vitale contacted Robin Young in the human resources department at Wegmans to inform her employer that she was ready to return to work.

48. Ms. Young had Ms. Vitale contact Marybeth Stewart, who told Ms. Vitale that she should come in to the Northborough store on August 3, 2018.

49. When Ms. Vitale arrived at the Wegmans store on August 3rd, she was directed to the store manager's office.

50. Kyla Novinger from Wegmans' human resources department was present in the office, as was Alicia Le, a "specialist" from the company's "Asset Protection" team.

51. Ms. Vitale was informed that her employment with Wegmans was being terminated

7

effective immediately because of an "investigation" that determined that she would be a "threat" on or off the job.

52. Ms. Vitale asked for further explanation for this decision, but none was provided.

53. Instead, Ms. Vitale was provided with a Notice of Separation (the "Notice"), which stated that she was being fired for "[c]onduct that could reasonably be viewed as threatening; violent; corrupt; or unlawful; on or off the job."

54. The Notice further indicated that Wegmans had learned that Ms. Vitale had been "involved in conduct outside of work that could be in violation of our Wegmans Policies and Work Rules...our Asset Protection team was able to confirm this information. Based on these findings, a decision has been made to separate Cathy's employment with Wegmans."

55. Ms. Vitale requested further details regarding what the "investigation" of her conduct entailed or concluded, but Wegmans refused to provide her with any information regarding its investigation.

56. Wegmans also declined her requests to provide her with any further justification for its decision to terminate her employment.

## COUNT I
### DISCRIMINATION BASED ON A RECORD OF DISABILITY OR IMPAIRMENT AND/OR BASED ON WEGMANS DECISION TO REGARD MS. VITALE AS HAVING AN IMPAIRMENT OR DISABILITY

57. Ms. Vitale hereby realleges, reasserts, and incorporates by reference the facts and allegations stated in the previous paragraphs.

58. Wegmans discriminated against Ms. Vitale by terminating her employment based on her record of disability or impairment or because Wegmans regarded her as having an impairment or disability in violation of Mass. Gen. Laws ch. 151B, § 4 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, et seq.

8

## COUNT II
## RETALIATION BASED ON A REQUEST FOR, AND RECEIPT OF, A REASONABLE ACCOMMODATION FOR A DISABILITY

59.   Ms. Vitale hereby realleges, reasserts, and incorporates by reference the facts and

allegations stated in the previous paragraphs.

60.   Wegmans retaliated against Ms. Vitale for requesting and receiving a reasonable

accommodation of her disability, also in violation of Mass. Gen. Laws ch. 151B, § 4 and

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, et seq.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff Catherine Vitale requests that this Court:

a.   Enter a judgment in her favor against the Defendant;

b.   Award her actual damages, including, but not limited to, back pay, front pay,

emotional distress damages, and all other remedies in law and equity available under

M.G.L. c. 151B, § 9;

c.   Award her punitive damages;

d.   Award her reasonable attorneys' fees and costs; and

e.   Provide any other relief that is just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all claims that are so triable.

Respectfully Submitted,
CATHERINE VITALE,
By Her Attorney,


Darren Griffis, BBO #675627
Glickman, Sugarman, Kneeland &
        Gribouski
11 Harvard Street
Worcester, MA 01609
508-756-6206
griffis@gskandg.com

Date: February 19, 2020

10

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2085CV00202 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Vitale, Catherine vs. Wegmans Food Markets, Inc. Doing Business as Wegmans Massachusetts, Inc. | Dennis P. McManus, Clerk of Courts |
|---|---|
| TO: Wegmans Food Markets, Inc. Doing Business as Wegmans Mass  Northborough, MA 01532 | COURT NAME & ADDRESS Worcester County Superior Court 225 Main Street Worcester, MA 01608 |

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                                                        DEADLINE

|  | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court |  | 05/19/2020 |  |
| Response to the complaint filed (also see MRCP 12) |  | 06/18/2020 |  |
| All motions under MRCP 12, 19, and 20 | 06/18/2020 | 07/20/2020 | 08/17/2020 |
| All motions under MRCP 15 | 06/18/2020 | 07/20/2020 | 08/17/2020 |
| All discovery requests **and depositions** served and non-expert depositions completed | 12/15/2020 |  |  |
| All motions under MRCP 56 | 01/14/2021 | 02/15/2021 |  |
| Final pre-trial conference held and/or firm trial date set |  |  | 06/14/2021 |
| Case shall be resolved and judgment shall issue by |  |  | 02/18/2022 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 02/20/2020 | ASSISTANT CLERK Laurie Jurgiel | PHONE (508)831-2350 |
|---|---|---|

Date/Time Printed: 02-20-2020 16:12:41

SCV026\ 08/2018