UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

---

CATHERINE VITALE,

        Plaintiff,

        v.

WEGMANS FOOD MARKETS, INC.
(D/B/A WEGMANS MASSACHUSETTS, INC.),

        **Defendant.**

ANSWER

Civil Action No.: 4:20-CV-40034

---

Defendant Wegmans Food Markets, Inc. ("Wegmans"), by and through its attorneys, Harter Secrest & Emery LLP, as and for its Answer to the Complaint herein, state as follows:

**1.     Defendant Wegmans Food Markets, Inc. (d/b/a/ Wegmans Massachusetts, Inc.) (hereafter "Wegmans") discriminated against Plaintiff Catherine Vitale (hereafter "Ms. Vitale") by terminating her employment based on her record of disability or impairment or because Wegmans regarded her as having an impairment or disability in violation of Mass. Gen. Laws ch. 151B, § 4 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, et seq.**

    ANSWER:     Wegmans denies the allegations in paragraph 1 of the Complaint.

**2.     In addition, Wegmans retaliated against Ms. Vitale for requesting and receiving a reasonable accommodation of her disability, also in violation of Mass. Gen Laws ch. 151B, § 4 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, et seq.**

    ANSWER:     Wegmans denies the allegations in paragraph 2 of the Complaint.

## JURISDICTION

**3.     Ms. Vitale filed a complaint with the Massachusetts Commission Against Discrimination on May 29, 2019, more than 90 days prior to the filing of this action.**

    ANSWER:     Wegmans admits the allegations in paragraph 3 of the Complaint.

**4.     This Court has jurisdiction over this matter pursuant to M.G.L. c. 151B, § 9.**

    ANSWER:     Wegmans denies the allegations in paragraph 4 of the Complaint.

## PARTIES

**5.     The Plaintiff, Catherine Vitale is a resident of Shrewsbury, Massachusetts.**

ANSWER:     Wegmans denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 5 of the Complaint.

**6.     The Defendant, Wegmans Food Markets, Inc. (d/b/a Wegmans Massachusetts, Inc.), is a New York corporation that owns and operates a supermarket located in Northborough, Massachusetts.**

ANSWER:     Wegmans admits only that it is a New York corporation that owns and operates a supermarket in Northborough, Massachusetts, and denies the remaining allegations in paragraph 6 of the Complaint.

## ALLEGED FACTS

**7.     On May 2, 2011, Ms. Vitale applied for a position with the Wegmans supermarket that was scheduled to open at 9102 Shops Way in Northborough, Massachusetts 01532.**

ANSWER:     Wegmans admits the allegations in paragraph 7 of the Complaint.

**8.     Ms. Vitale was offered a position as a cashier and commenced her employment with Wegmans on September 23, 2011.**

ANSWER:     Wegmans admits the allegations in paragraph 8 of the Complaint.

**9.     Although Ms. Vitale was hired as a cashier, before the store opened, she was asked to work as a price checker and customer service associate in the Pricing Department.**

ANSWER:     Wegmans admits the allegations in paragraph 9 of the Complaint.

**10.     Ms. Vitale willingly accepted this assignment and worked part-time as a price checker when the Wegman's store opened.**

ANSWER:     Wegmans admits the allegations in paragraph 10 of the Complaint.

**11.     In November of 2012, Ms. Vitale applied for a service desk position within the Wegmans customer service department.**

ANSWER:     Wegmans admits the allegations in paragraph 11 of the Complaint.

**12.** In the "Job Posting Evaluation Form" that was completed by Ms. Vitale's supervisor from the pricing department, the supervisor noted that Ms. Vitale met all of eligibility requirements for the service desk position and that she had "demonstrated exceptional customer service skills while performing her duties as a price checker. She greets and helps the customers...Her communications skills are above average...I thought her skills are well suited for the position."

ANSWER: Wegmans admits the allegations in paragraph 12 of the Complaint, but specifically avers that the Complaint selectively quotes from the Job Posting Evaluation Form, which speaks for itself.

**13.** Although Ms. Vitale was not selected for this position, the "Job Posting Feedback" form indicated that she "[g]reets customers and answers their questions in a friendly manner. Proactively offers assistance to customers and provides accurate, timely information...Cathy is a people pleaser and will go above and beyond to make people happy."

ANSWER: Wegmans admits the allegations in paragraph 13 of the Complaint, but specifically avers that the Complaint selectively quotes from the Job Posting Feedback form, which speaks for itself.

**14.** Ms. Vitale received her first performance review in January of 2013. In that review, her supervisor, Stacy Lindeman, stated that Ms. Vitale had "helped implement the pricing structure that we utilize every day...Cathy goes above and beyond for her customers. She is always willing with a smile on her face...Cathy has been challenged to take on many different roles within the store and does so with pride. When needed, she helps the front end by jumping on register when they get busy and recently, she has been helping out HBC on load days to help drive their sales."

ANSWER: Wegmans admits the allegations in paragraph 14 of the Complaint, but specifically avers that the Complaint selectively quotes from the Performance Review, which speaks for itself.

**15.** After she was not chosen for the service desk position, Ms. Vitale decided to cross-train in the perishable foods department in the Northborough Wegmans store and picked up hours at both the pizza and subs counters in order to become more familiar with the overall operations of the store.

ANSWER: Wegmans admits the allegations in paragraph 15 of the Complaint.

      **16.**    **In September 2013, Ms. Vitale again saw an opportunity to advance her career with Wegmans and applied for a full-time grocery customer service position at the Northborough location.**

      ANSWER:    Wegmans admits only that Ms. Vitale applied for a full-time grocery customer service position in September 2013, but denies the remaining allegations in paragraph 16 of the Complaint.

      **17.**    **Ms. Vitale received this promotion and started working in this position on October 5, 2013.**

      ANSWER:    Wegmans admits the allegations in paragraph 17 of the Complaint.

      **18.**    **As part of her first performance review in this new position, Ms. Vitale's supervisor, Jason Baetzhold, reported that "Cathy greets customers and answers their questions in a friendly manner. She proactively offers assistance to customers and provides accurate, timely information...Cathy does a great job of approaching customers any time she feels she can be of assistance...Over the past couple of months, Cathy has gotten a good understanding of how the grocery side of the store works. She has been a great asset to our team...Cathy is eager to learn as much as possible and we look forward to working with her giving her new challenges."**

      ANSWER:    Wegmans admits the allegations in paragraph 18 of the Complaint, but specifically avers that the Complaint selectively quotes from the Performance Review, which speaks for itself.

      **19.**    **Despite her success in her new position in customer service, Ms. Vitale decided to apply for an administrative assistant position with Wegmans' New England division office.**

      ANSWER:    Wegmans admits only that Ms. Vitale applied for an Administrative Assistant position on or about February 17, 2014, but denies the remaining allegations in paragraph 19 of the Complaint.

      **20.**    **Ordinarily, Wegmans' employees are not permitted to apply for a transfer into a new position until they have been in their current position for at least six months; however, because of Ms. Vitale's stellar record of employment, an exception was made, and she was allowed to post for this job opening.**

      ANSWER:    Wegmans admits only that it makes exceptions to the length of service requirement for job postings, especially when there is a limited number of applicants, but denies the remaining allegations in paragraph 20 of the Complaint.

**21.** In the "Job Posting Evaluation Form" submitted in connection with this application, Stacy Orrico, reported that "[o]ver the course of time we have had the pleasure to work with Cathy in grocery, she has gone above and beyond on a daily basis in operations...Cathy has been a great asset to the grocery team. She is a proactive learner, always asking to learn new things once she feels she has mastered a program...Cathy would be a successful asset to the New England Division."

ANSWER: Wegmans admits the allegations in paragraph 13 of the Complaint, but specifically avers that the Complaint selectively quotes from the Job Posting Evaluation form, which speaks for itself.

**22.** On February 26, 2014, Ms. Vitale was offered and accepted the administrative assistant position with Wegmans' New England Division.

ANSWER: Wegmans admits the allegations in paragraph 22 of the Complaint.

**23.** Ms. Vitale started working in that administrative assistant position on March 9, 2014 and received two raises, including an increase in salary on July 17, 2015, which she received for "merit."

ANSWER: Wegmans admits only that Ms. Vitale received increases in pay in 2014 and 2015, including a merit increase in November 2015, but denies the remaining allegations in paragraph 23 of the Complaint.

**24.** Ms. Vitale received a performance review in her new administrative assistant position on June 3, 2016.

ANSWER: Wegmans admits the allegations in paragraph 24 of the Complaint.

**25.** In that review, Marybeth Stewart, Wegmans' Human Resources Manager for the New England division, repeatedly praised Ms. Vitale for her work as an administrative assistant.

ANSWER: Wegmans admits only that, in the June 3, 2016 Performance Plan and Review, Marybeth Stewart praised aspects of Ms. Vitale's performance and also set forth development goals, but denies the remaining allegations in paragraph 25 of the Complaint.

26. Ms. Stewart reported that "Cathy has great energy and enthusiasm and is a very positive member of the division office. She has a natural way of making people...feel comfortable. She is willing to take on any task we ask of her and asks clarifying questions when needed...Cathy is a valued member of the New England Division team!"

ANSWER: Wegmans admits the allegations in paragraph 26 of the Complaint, but specifically avers that the Complaint selectively quotes from the Performance Plan and Review, which speaks for itself.

27. Although she was very successful in her administrative assistant position, Ms. Vitale decided to once again apply for a promotion that would increase her responsibilities and knowledge of Wegmans' operations.

ANSWER: Wegmans admits only that Ms. Vitale applied for a promotion while she was an administrative assistant, but denies the remaining allegations in paragraph 27 of the Complaint.

28. On April 26, 2017, Ms. Vitale applied to become a Pricing Coordinator for the Northborough store.

ANSWER: Wegmans admits only that Ms. Vitale applied for and subsequently became a Pricing Coordinator for the Northborough store on or about May 16, 2017, but denies the remaining allegations in paragraph 28 of the Complaint.

29. In the "Job Posting Evaluation Form" submitted in connection with this application, Ms. Stewart, the Human Resources Manager, stated that Ms. Vitale "truly lives the Who We Are Values each and every day; she excels in Teamwork and Diversity Awareness and also provides Incredible Customer Service in every task she does...She would be a great candidate for the position...She's willing to take on any task that's asked of her, and has consistently taken on additional responsibilities in the time she's been in the position."

ANSWER: Wegmans admits the allegations in paragraph 29 of the Complaint, but specifically avers that the Complaint selectively quotes from the Job Posting Evaluation Form, which speaks for itself.

30. Ms. Vitale was offered the Pricing Coordinator position and accepted that promotion on May 16, 2017.

ANSWER: Wegmans admits the allegations in paragraph 30 of the Complaint.

**31.** Ms. Vitale was sent to Rochester, New York in June of 2017 for training for this new position.

ANSWER: Wegmans admits the allegations in paragraph 31 of the Complaint.

**32.** During that training trip, Ms. Vitale broke her wrist when she fell in a parking lot and was forced to take a leave under the company's workers compensation plan.

ANSWER: Wegmans admits the allegations in paragraph 32 of the Complaint.

**33.** Ms. Vitale was out on workers compensation leave from June 2017 through September 2017.

ANSWER: Wegmans admits the allegations in paragraph 33 of the Complaint, but avers that Ms. Vitale returned to work on October 8, 2017.

**34.** Upon her return to work in September 2017, Ms. Vitale worked as the Pricing Coordinator in the Northborough Wegmans store and continued to receive exemplary feedback on her performance.

ANSWER: Wegmans admits only that Ms. Vitale returned to work on October 8, 2017 and worked as a Pricing Coordinator at the Northborough Wegmans store, but denies the remaining allegations in paragraph 34 of the Complaint.

**35.** For example, in Ms. Vitale's April 26, 2018 Performance Review, her manager, Eugene Coon, noted that "Cathy understands the importance of her job and executes it with accuracy and enthusiasm. Cathy is in-tune with the entire store...Cathy goes above and beyond every day by communicating concerns throughout the store to management. Nice work Cathy!"

ANSWER: Wegmans admits the allegations in paragraph 35 of the Complaint, but specifically avers that the Complaint selectively quotes from the Performance Plan and Review, which speaks for itself.

**36.** As that evaluation form indicates, Ms. Vitale was also in the process of training to provide performance reviews to other employees at Wegmans.

ANSWER: Wegmans admits only that the evaluation form stated that Ms. Vitale would attend performance plan and review training in the future, but denies the remaining allegations in paragraph 36 of the Complaint.

**37.** On May 15, 2018, Ms. Vitale was in a car accident in which her car was badly damaged after she hit a sign on the side of the road.

ANSWER: Wegmans admits the allegations in paragraph 37 of the Complaint.

**38.** Ms. Vitale contacted Wegmans and informed her employer that she was not going to be able to make it to work that day because she had been in an accident.

ANSWER: Wegmans denies the allegations in paragraph 38 of the Complaint.

**39.** On that same day, Ms. Vitale checked herself in to the New England Recovery Center detoxification program to address an ongoing substance use issue that had developed as a result of pain medication she was prescribed following her June 2017 accident at work.

ANSWER: Wegmans denies knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in paragraph 39 of the Complaint.

**40.** On May 17, 2018, Ms. Vitale informed her employer that she needed to take a medical leave to address an "Employee Health Condition," as that term is defined under Wegmans' employment policies.

ANSWER: Wegmans admits the allegations in paragraph 40 of the Complaint.

**41.** Ms. Vitale's leave was approved under the federal Family Medical Leave Act ("FNMA") and Wegmans' own Continued Employment Leave policy.

ANSWER: Wegmans admits only that Ms. Vitale's leave was approved and specifically

avers that Ms. Vitale was not entitled to any FMLA leave until June 27, 2018.

**42.** After completing the detoxification program, Ms. Vitale entered and successfully completed substance use treatment programs at Recovery Centers of America in Danvers, Massachusetts and Recovering Champions in Falmouth, Massachusetts.

ANSWER: Wegmans denies knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in paragraph 42 of the Complaint.

**43.** During the entire process of her treatment, Ms. Vitale applied for - and received - permission from Wegmans to continue her medical leave under either the FMLA or Wegmans' Continued Employment Leave Policy.

ANSWER: Wegmans admits only that Ms. Vitale's leave was approved and specifically

avers that Ms. Vitale was not entitled to any FMLA leave until June 27, 2018.

8

**44.     As part of this approval process, she provided all necessary documentation substantiating her need for continued treatment and the accompanying leave.**

ANSWER:     Wegmans admits the allegations in paragraph 44 of the Complaint.

**45.     Wegmans always approved her requests for continued leave.**

ANSWER:     Wegmans admits the allegations in paragraph 45 of the Complaint.

**46.     Ms. Vitale was successfully discharged from the Recovering Champions program on July 28, 2018.**

ANSWER:     Wegmans denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 46 of the Complaint.

**47.     On or about July 30, 2018, Ms. Vitale contacted Robin Young in the human resources department at Wegmans to inform her employer that she was ready to return to work.**

ANSWER:     Wegmans denies the allegations in paragraph 47 of the Complaint.

**48.     Ms. Young had Ms. Vitale contact Marybeth Stewart, who told Ms. Vitale that she should come in to the Northborough store on August 3, 2018.**

ANSWER:     Wegmans admits the allegations in paragraph 48 of the Complaint.

**49.     When Ms. Vitale arrived at the Wegmans store on August 3rd, she was directed to the store manager's office.**

ANSWER:     Wegmans admits the allegations in paragraph 49 of the Complaint.

**50.     Kyla Novinger from Wegmans' human resources department was present in the office, as was Alicia Le, a "specialist" from the company's "Asset Protection" team.**

ANSWER:     Wegmans admits the allegations in paragraph 50 of the Complaint, but specifically avers that Alisha Le is Wegmans' Asset Protection Manager.

**51.     Ms. Vitale was informed that her employment with Wegmans was being terminated effective immediately because of an "investigation" that determined that she would be a "threat" on or off the job.**

ANSWER:     Wegmans admits the allegations in paragraph 51 of the Complaint.

**52.     Ms. Vitale asked for further explanation for this decision, but none was provided.**

ANSWER:     Wegmans admits the allegations in paragraph 52 of the Complaint.

9

**53.**     Instead, Ms. Vitale was provided with a Notice of Separation (the "Notice"), which stated that she was being fired for "[c]onduct that could reasonably be viewed as threatening; violent; corrupt; or unlawful; on or off the job."

  ANSWER:     Wegmans admits the allegations in paragraph 53 of the Complaint.

**54.**     The Notice further indicated that Wegmans had learned that Ms. Vitale had been "involved in conduct outside of work that could be in violation of our Wegmans Policies and Work Rules...our Asset Protection team was able to confirm this information. Based on these findings, a decision has been made to separate Cathy's employment with Wegmans."

  ANSWER:     Wegmans admits the allegations in paragraph 54 of the Complaint.

**55.**     Ms. Vitale requested further details regarding what the "investigation" of her conduct entailed or concluded, but Wegmans refused to provide her with any information regarding its investigation.

  ANSWER:     Wegmans admits the allegations in paragraph 55 of the Complaint.

**56.**     Wegmans also declined her requests to provide her with any further justification for its decision to terminate her employment.

  ANSWER:     Wegmans admits the allegations in paragraph 56 of the Complaint.

<u>**COUNT I**</u>
**ALLEGED DISCRIMINATION BASED ON A RECORD OF DISABILITY OR IMPAIRMENT AND/OR BASED ON WEGMANS DECISION TO REGARD MS. VITALE AS HAVING AN IMPAIRMENT OR DISABILITY**

**57.**     Ms. Vitale hereby realleges, reasserts, and incorporates by reference the facts and allegations stated in the previous paragraphs.

  ANSWER:     Wegmans repeats and reavers its responses to paragraphs 1 to 56 of the

Complaint as if set forth fully herein.

**58.**     Wegmans discriminated against Ms. Vitale by terminating her employment based on her record of disability or impairment or because Wegmans regarded her as having an impairment or disability in violation of Mass. Gen. Laws ch. 151B, § 4 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, et seq.

  ANSWER:     Wegmans denies the allegations in paragraph 58 of the Complaint.

## COUNT II
### ALLEGED RETALIATION BASED ON A REQUEST FOR, AND RECEIPT OF, A REASONABLE ACCOMMODATION FOR A DISABILITY

**59.** Ms. Vitale hereby realleges, reasserts, and incorporates by reference the facts and allegations stated in the previous paragraphs.

ANSWER: Wegmans repeats and reavers its responses to paragraphs 1 to 58 of the Complaint as if set forth fully herein.

**60.** Wegmans retaliated against Ms. Vitale for requesting and receiving a reasonable accommodation of her disability, also in violation of Mass. Gen. Laws ch. 151B, § 4 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, et seq.

ANSWER: Wegmans denies the allegations in paragraph 60 of the Complaint.

## ADDITIONAL DENIALS

**61.** Wegmans denies that Ms. Vitale is entitled to any of the relief requested in her Complaint.

**62.** Wegmans denies each and every allegation in the Complaint not heretofore specifically admitted, denied or otherwise controverted.

**63.** Wegmans denies that Ms. Vitale is entitled to a trial by jury with respect to all of her claims.

## DEFENSES

Without assuming any burden of proof that otherwise does not exist as a matter of law, Wegmans asserts the following defenses:

### FIRST DEFENSE

**64.** The Complaint fails to state a claim upon which relief may be granted.

**SECOND DEFENSE**

65. At all times, Wegmans acted in good faith and without discriminatory intent, and had reasonable grounds to believe that all employment-related acts or omissions that allegedly constituted violations of any state or federal law, which violations Wegmans denies, were based on proper employment decisions supported by legitimate, nondiscriminatory reasons and were not violations of any federal or state statute.

**THIRD DEFENSE**

66. To the extent that Wegmans' decisions and/or actions were based upon impermissible factors, Wegmans would have made the same decisions and taken the same actions in the absence of such impermissible factors, which may preclude a finding of liability against Wegmans and/or affect the amount of damages, if any, available to Ms. Vitale.

**FOURTH DEFENSE**

67. To the extent any of the employment decision and/or actions at issue were based upon impermissible factors, such actions were taken by other individuals or entities without authorization from Wegmans and/or were done in good faith and without malice or reckless indifference to individual's rights on the part of Wegmans.

**FIFTH DEFENSE**

68. Ms. Vitale's claims are barred, in part, by the applicable statutes of limitations and/or administrative filing deadlines, and by her failure to exhaust administrative remedies by obtaining a right-to-sue notice with respect to her Federal claim.

**SIXTH DEFENSE**

69. To the extent Ms.Vitale claims that she was perceived as disabled and/or has a record of a disability, she would not be entitled to a reasonable accommodation.

**SEVENTH DEFENSE**

70.     Ms. Vitale has a legal obligation to mitigate her claimed damages and to the extent she has not used reasonable diligence to seek or obtain other employment and otherwise mitigate her damages, her claims for damages are barred. To the extent that Ms. Vitale received interim income and benefits from other sources and to the extent that her alleged injuries and losses have been paid, replaced or indemnified, in whole or in part, from collateral sources, or with reasonable certainty will likely be paid, replaced or indemnified in the future from such collateral sources, the same should be offset against damages, if any.

**EIGHTH DEFENSE**

71.     Ms. Vitale is not a qualified individual with a disability and/or a qualified handicapped person within the meaning of applicable Federal or State law because at the relevant time, she engaged in the illegal use of drugs.

**NINTH DEFENSE**

72.     Ms. Vitale's conduct constituted a direct threat to the health and safety of herself or others and/or created a risk of future injury to herself or others.

**TENTH DEFENSE**

73.     Wegmans asserts all caps, limitations, or restrictions on recovery of damages as allowed by applicable federal and/or state law.

**WHEREFORE**, Defendants Wegmans Food Markets, Inc. respectfully requests judgment dismissing the Complaint in its entirety with prejudice, together with such other and further relief as the Court deems just, proper, and equitable.

DATED: Rochester, New York
April 10, 2020

**WEGMANS FOOD MARKETS, INC.**
**by its attorneys**

/s/ Julia E. Green
Julia E. Green BBO# 658730
Harter Secrest & Emery LLP
1600 Bausch & Lomb Place
Rochester, New York 14604-2711
Telephone: (585) 231-1191
Email: jegreen@hselaw.com

### CERTIFICATE OF SERVICE

I, Julia E. Green, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 10, 2020.

/s/ Julia E. Green
Julia E. Green